OPINION
{¶ 1} Attorneys Joseph Walker and Marylee Gill Sambol are back before this court for the second time in connection with Walker's claim against Sambol for a share of the legal fees received by Sambol arising out of the now infamous "Dr. Burt cases."
 {¶ 2} The complaint, originally filed in the court of common pleas, was referred for arbitration to the Dayton Bar Association Committee for Resolution of Fee Disputes and Law Firm Dissolutions and Withdrawals. The parties agreed to be bound by the determination of that committee. (Appellant's Br., p. 3).
 {¶ 3} The arbitration panel rendered a decision and award which provides in pertinent part:
 {¶ 4} "After considering the testimony of the witnesses, reviewing the documents submitted by the parties, listening to the arguments of counsel and reading the cases cited by both sides, it is the decision of this panel that Mr. Joseph Walker is entitled to receive from Ms. MaryLee Gill Sambol the sum of $1,057,000.00 as his portion of the fees collected by her on the cases referred to as the `Burt cases.'
 {¶ 5} "* * *
 {¶ 6} "Pursuant to the Rules and Procedures of the Dayton Bar Association Committee for Resolution of Fee Disputes and Law Firm Dissolutions and Withdrawals, (Rule IV,(B)(2)) as well as the parties' acknowledgment of the binding nature of this decision, this decision and award is binding and shall constitute a full and complete resolution of all matters relating to the dispute."
 {¶ 7} In the first appeal to this court, brought by Sambol, we reversed and remanded for the sole purpose of "reconsideration of the extent of (post judgment) interest to be awarded on the arbitration award."
 {¶ 8} After remand, Walker moved for pre-judgment interest on the $1,057,000 award of the arbitration panel.
 {¶ 9} The trial court conducted a hearing on the issues of pre-judgment and post-judgment interest and thereafter awarded no pre-judgment interest and post-judgment interest in the amount of $3,548.41.
 {¶ 10} Walker has appealed, advancing two assignments of error, the first stating:
 {¶ 11} "The trial court erred by deducting a portion of pre-judgment interest from the properly determined amount of post-judgment interest."
 {¶ 12} The court determined that the post-judgment interest on the $1,057,000 award was $10,049.61, which Walker agrees is correct.
 {¶ 13} Walker's claim of error under this assignment is the court's determination that Sambol had already paid him more than the amount of the award by $6,501.20, and its crediting Sambol with this amount against the $10,049.61, thus awarding him judgment for only an additional $3,548.41.
 {¶ 14} At the time of the hearing, Walker had received $1,063,501.20. $300,000 had been paid by check from Sambol, and $763,501.20 was paid to him from an escrow account into which funds had been deposited, representing legal fees from the Dr. Burt cases.
 {¶ 15} Walker claims that $20,010.25 of the escrow account represented interest earned on the funds while on deposit, and constituted pre-judgment interest. Although Walker concedes that this amount should be deducted from any award of pre-judgment interest, he contends the trial court mixed apples and oranges when it concluded that Walker had been overpaid rather than underpaid.
 {¶ 16} We disagree.
 {¶ 17} The arbitration panel awarded Walker $1,057,000. Walker received this amount plus $6,501.20. The matter was remanded for determination of post-judgment interest on the award. Walker agrees that the trial court's post-judgment interest determination was correct. We find no error in the trial court's determination that Walker was overpaid and its deduction of the overpayment from post-judgment interest payable on the award.
 {¶ 18} The first assignment of error is overruled.
 {¶ 19} The second assignment states:
 {¶ 20} "The trial court erred by not granting appellant pre-judgment interest.
 {¶ 21} "a) The Trial Court erred by permitting the testimony of one of the arbitration panel members following the arbitration panel's final decision and award.
 {¶ 22} "b) The Trial Court erred by relying upon the testimony of the arbitration panel member, in deciding not to award Appellant pre-judgment interest, after Appellee had exhausted her statutory challenge of the arbitration award.
 {¶ 23} "c) The Trial Court erred by not making a factual determination of the amount of pre-judgment interest owed Appellant pursuant to ORC § 1343.03(A)."
 {¶ 24} Walker asserts under this assignment that the trial court erred in permitting Robert Surdyk, the chairman of the three-attorney arbitration panel, to testify at the hearing on pre-judgment and post-judgment interest.
 {¶ 25} He contends that as of the time of the hearing, the authority of the panel had ended and the sole statutory remedy for challenging the award had been exhausted. He claims that the trial court erred in relying upon Surdyk's testimony "to modify and/or enlarge the Trial Court's previous judgment without making any factual determination as to whether R.C. § 1343.03(A) had been complied with," asserting that the issue of pre-judgment interest was not before the arbitrators. He points to the decision and award that states that "the sum of $1,057,000 (is Walker's) portion of the fees. . . ." in support of this last claim. (Emphasis ours).
 {¶ 26} In our judgment, Surdyk's testimony, and the trial court's reliance upon it, did not infect the proceedings on the pre-judgment interest issue with error.
 {¶ 27} First of all, Sambol was not challenging the award or attempting to modify it. More important, we are not persuaded that the trial court modified or enlarged the judgment which confirmed the arbitrators' award. Surdyk's testimony was elicited to explain that the panel had considered Walker's loss of use of his share of the fees — which is the purpose of pre-judgment interest — in arriving at the award of $1,057,000. Surdyk's testimony was as follows:
 {¶ 28} "Q. (By Arthur Hollencamp, counsel for Sambol) All right. That's fine.
 {¶ 29} "Now, if you would tell me in connection with making that award, did you, did you take into account the use of the money that was being awarded over the time before it was awarded?
 {¶ 30} "A. We took into account Mr. Walker's loss of the use of that money.
 {¶ 31} "Q. Okay. Up until the time of the award?
 {¶ 32} "A. That's correct.
 {¶ 33} "Q. Can you just tell us what all you took into account when you made your decision. That may be a broad question. I wasn't really talking about all the factors that went into —
 {¶ 34} "A. We took into account all the evidence and materials that were presented to us during the course of the hearing.
 {¶ 35} "Q. Uh-huh.
 {¶ 36} "A. And we concluded at that point in time that Mr. Walker was entitled to a sum of money from Ms. Sambol as a result of the relationship which the two of them had while working on these cases, which were in dispute.
 {¶ 37} "Q. Okay.
 {¶ 38} "A. At that point in time, we then undertook a discussion and then analysis of what would be adequate for Mr. Walker for his services, and what amount of money he would be entitled to under the nature and arrangement which we found to exist between the two of them.
 {¶ 39} "We decided the amount of fees, and we also felt that it was appropriate that Mr. Walker receive a sum of money to compensate him for the loss of that use of money for the period of time that the dispute was ongoing. And that was taken into account in the award which we made at that time.
 {¶ 40} "Q. And did you double check your recollection of that with any of the other arbitrators before you came here today?
 {¶ 41} "A. Yes.
 {¶ 42} "Q. And confirmed it?
 {¶ 43} "A. Yes.
 {¶ 44} "* * *
 {¶ 45} "Q. (By David Williamson, counsel for Walker) All right. And for the court's purposes the amount of money that were determined to be fees, those were reviewed by you and the other panel members in camera, is that correct?
 {¶ 46} "A. That's correct.
 {¶ 47} "Q. And the information regarding the same was not shared with myself or Mr. Walker because of concerns about the confidentiality provisions, the settlement agreement with the various Dr. Burt patient plaintiffs?
 {¶ 48} "A. That's my recollection.
 {¶ 49} "* * *
 {¶ 50} "Q. Well, and to make sure that we understand what you mean by properly compensate, did you — did you apply any sort of an equation to a certain amount of money and then add to that?
 {¶ 51} "A. I can't recall, specifically how we came up with the sum. I know that I can recall that we had discussions on arriving at a figure which would appropriately compensate Mr. Walker.
 {¶ 52} "Q. All right. And by appropriately compensate, do you mean for the loss of the attorney's fees which, which he had not received?
 {¶ 53} "A. That's correct.
 {¶ 54} "Q. During the course of the dispute?
 {¶ 55} "A. That's correct.
 {¶ 56} "* * *
 {¶ 57} "THE WITNESS: Also taking into account the loss of the use of that money for the period of time that that was.
 {¶ 58} "BY MR. WILLIAMSON:
 {¶ 59} "Q. Did you apply a, a, and I guess my question is, did you apply a formula for the loss of the use of the money that you are talking about?
 {¶ 60} "A. I can't recall specifically how we arrived at that figure. I know it entered into our thought processes.
 {¶ 61} "Q. Okay. But as we sit here today, you can't tell us —
 {¶ 62} "A. No.
 {¶ 63} "Q. — what kind of percentages, what statutory rate, or anything along those lines that you and the panel applied?
 {¶ 64} "A. No. We came up with a decision which we felt totally compensated Mr. Walker.
 {¶ 65} "Now, what percentage we may have used, what the equation was, what the thought process may have been, I cannot tell you as I sit here today.
 {¶ 66} "Q. Okay. And you don't recall as to whether or not you utilized the provisions of Ohio Revised Code, 1343.03?
 {¶ 67} "A. That's correct. I cannot recall that."
 {¶ 68} What is manifestly clear from Surdyk's testimony is that the arbitration award is comprised of two components — fees and pre-judgment interest — although it is also apparent that Surdyk was unable to quantify either component or explain with any particularity how the ultimate award was determined. The trial court's determination not to award pre-judgment interest, based on Surdyk's testimony, was not a modification or enlargement of the award or of the judgment confirming it. Rather, the trial court merely determined that the award included pre-judgment interest. Accordingly, we conclude that because the arbitrators' award compensated Walker for both his share of the fees and his loss of use of those fees — the latter being the purpose of pre-judgment interest — the trial court did not err in declining to make an additional award for pre-judgment interest.
 {¶ 69} We have not ignored Walker's argument that the statement in the decision and award that the sum of $1,057,000 is his portion of thefees establishes that the issue of pre-judgment interest was not before the arbitrators.
 {¶ 70} However, this argument is refuted by the unrebutted testimony of Surdyk. As quoted above, the arbitrators' decision was binding, and "a full and complete resolution of all matters relating to the dispute." Certainly if there was a question of whether the award included pre-judgment interest, it was within the discretion of the trial court to permit Surdyk to clarify the meaning of the decision and award. (Walker only objected to Surdyk's testimony after Surdyk had completed his testimony and the parties had presented arguments to the court).
 {¶ 71} Walker also argues that the trial court erred in not making the factual determination required by R.C. 1343.03(A).
 {¶ 72} The short answer to this argument is that Walker presented no evidence at the hearing upon which to make such a determination. We recognize that due to attorney-client confidentiality concerns, Walker would have had difficulty marshalling such evidence.
 {¶ 73} Walker suggested that he be granted access to the heretofore confidential information, or "that either the Court review the information herself or appoint a special master to do so in order to determine the amount of pre-judgment interest to which (he was) entitled."
 {¶ 74} Walker was non-specific as to what information he was referring to and the record provides no illumination in that regard. It is clear that no such evidence was before the trial court and this record does not reveal any action on Walker's part to follow up on his suggestions.
 {¶ 75} In short, the parties agreed to be bound by the arbitrators' decision. The arbitrators' award included an amount to compensate Walker for the loss of use of the fees to which he was entitled. The trial court had no evidence upon which to consider a different award of prejudgment interest.
 {¶ 76} On this record, no error is apparent and the second assignment is overruled.
 {¶ 77} The judgment will be affirmed.
BROGAN, J. and YOUNG, J., concur.